# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES H. TAKECHI,<br><br>    Plaintiff,<br><br>    v.<br><br>G. ADAME, et al.,<br><br>    Defendants.<br>_____ / | CASE NO. 1:12-cv-00913-AWI-GBC (PC)<br><br>ORDER DISMISSING COMPLAINT, WITH LEAVE TO AMEND, FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED<br><br>Doc. 1<br><br>THIRTY-DAY DEADLINE |

**Screening Order**

**I. Procedural History, Screening Requirement, and Standard**

On October 31, 2011, Plaintiff James H. Takechi ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action filed this civil rights action pursuant to 42 U.S.C. § 1983. Doc. 1. On February 28, 2012, the United States District Court, for the Northern District of California, San Francisco Division, directed service of Plaintiff's complaint, finding a cognizable claim against Defendants G. Adame and J. Tyree for due process gang validation. Doc. 5. On May 31, 2012, the Court transferred this action to the United States District Court for the Eastern District of California, Fresno Division[1] since the allegations in the complaint took place at California Correctional Institution in Kern County ("CCI").[2] Doc. 9.

---

[1] The prior case number was 3:11-cv-05285-RS (PC).

[2] Plaintiff is now incarcerated at Pelican Bay State Prison in Crescent City, California.

1    The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint, or portion thereof, if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii) (emphasis added).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), and courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. *Iqbal*, 556 U.S. at 678.

While prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, the pleading standard is now higher, *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Under § 1983, plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678-79; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by those acting under color of state law. *E.g.*, *Patel v. Kent School Dist.*, 648 F.3d 965, 971 (9th Cir. 2011); *Jones*, 297 F.3d at 934. For each defendant named, plaintiff must show a causal link between the violation of his rights and an action or omission of the defendant. *Iqbal*, 556 U.S. at 678-79; *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554,

570 (9th Cir. 2009). There is no respondeat superior liability under § 1983, and each defendant may only be held liable for misconduct directly attributed to him or her. *Iqbal*, 556 U.S. at 677-79; *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009).

## II. Plaintiff's Complaint

In Plaintiff's complaint, he names Defendants G. Adame, Correctional Officer, and J. Tyree, Correctional Sergeant at CCI. Compl. at 1, Doc. 1. Plaintiff also attached exhibits to his complaint. *Id.* at 6-24.

On March 12, 2009, interviews were held of all inmates and a confidential source alleged Plaintiff as a gang member associate. *Id.* at 7. A confidential memorandum authored by Officer T. Turmezei identified Plaintiff inmate James Takechi aka "Silent" as being a member of "Mesa," which is a group of inmates who oversee activities of the Mexican Mafia (EME). *Id.* at 7, 10, 16. On March 15, 2009, Defendant Adame began an investigation into Plaintiff's alleged association with the Mexican Mafia prison gang. *Id.* at 3, 17. Defendant Adame reported that on September 29, 2003, Plaintiff was initially validated as an active associate, based on six source items dated in 2000 and 2001. *Id.* at 17. On October 10, 2007, Plaintiff was validated as an inactive associate. *Id.* at 17, 19. Defendant Adame recommended to change Plaintiff's status from validated inactive to validated active associate with the Mexican Mafia (EME) prison gang. *Id.* at 17. On March 16, 2009, Defendant Adame completed his investigation and concluded there was sufficient evidence to validate Plaintiff as a gang associate, based on information from a confidential source. *Id.* at 3, 18. On March 18, 2009, Plaintiff was taken from general population and needlessly placed on contraband watch for four days. *Id.* at 3.

On March 20, 2009, Defendant Adame served Plaintiff with written notice of the reason for segregation and the 1030 Confidential Information Disclosure, but Plaintiff did not have use of his hands while in contraband watch. *Id.* at 3, 7, 16. In the validation chrono, Defendant Adame reported that Plaintiff refused to sign the validation interview notification and disclosure form, but Plaintiff did state that he understood the source items. *Id.* at 17, 18. Defendant Adame stated that Plaintiff was provided 72 hours to review the source items being submitted to validation. *Id.* at 17. Defendant Adame reported that the confidential source was considered reliable because the confidential source

has previously provided information which proved to be true. *Id.* at 16. Plaintiff said he had no knowledge of any gang activity and how did the confidential informant obtain that information. *Id.* at 17.

On March 22, 2009, Plaintiff was taken to segregation. *Id.* at 4. On March 23, 2009, Defendants Adame and Tyree arrived for Plaintiff's hearing / interview. *Id.* at 4. Plaintiff told them that he did not know the charges against him and he had not been re-issued the written notice. *Id.* Defendant Adame told Plaintiff it was "now or never" and gave him an abbreviated description of the charges. *Id.* Plaintiff told him that the information from the confidential source was false and requested that Adame personally question the confidential source. *Id.* Defendant Adame declined to personally question the confidential source. *Id.* Defendant Adame forwarded the validation package to Office of Correctional Safety ("OCS") for approval without first providing Plaintiff with a required copy of the interview or written notice of the charges. *Id.* On March 25, 2009, Plaintiff was removed from inactive status and re-validated as an active Mexican Mafia (EME) prison gang associate. *Id.* at 4, 10, 19. On April 3, 2009, Plaintiff was sentenced to an indeterminate Security Housing Unit ("SHU") term. *Id.* at 4.

On April 19, 2009, Plaintiff filed an appeal against Defendant Tyree, who is Adame's supervisor. *Id.* at 4, 22. Plaintiff stated he had not received his property. *Id.* Plaintiff also stated that his 1030 Confidential Information Disclosure was apparently lost because it was served to him in contraband watch (CW), and per CW policy, they are not allowed to have anything on their persons. *Id.* On April 20, 2009, Defendant Tyree granted the appeal, stating that Plaintiff's property, not deemed contraband, was returned, and Tyree issued Plaintiff a copy of the written notice of the charges against him. *Id.*

On April 30, 2009, the Institutional Classification Committee ("ICC") held a SHU initial review in absentia, as Plaintiff refused to attend the hearing. *Id.* at 20. The ICC elected to double cell Plaintiff with other validated gang members or associates of the Mexican Mafia (EME) gang for an indeterminate SHU pending transfer or 180 day review. *Id.*

On June 2, 2009, J. Gutierrez, Correctional Captain for the Investigative Services Unit, and K. Holland, Chief Deputy Warden for CCI, denied Plaintiff's inmate appeal at the second level of

1 review. *Id.* at 10-12. In the decision by Gutierrez, he stated that Plaintiff is requesting to be removed
2 from active Mexican Mafia prison gang status; that the confidential source take a polygraph test; and
3 that Plaintiff have access to any information from other confidential sources that contradict the
4 confidential source in Plaintiff's case. *Id.* at 10. Gutierrez also quoted from state regulations:

> § 3321. Confidential Material.
>
> (c) A confidential source's reliability may be established by one or more of the following criteria:
>
> (1) The confidential source has previously provided information which proved to be true.
>
> § 3378. Documentation of Critical Case Information.
>
> (f) A gang member or associate, who is categorized as inactive or validated as a dropout of a prison gang and released from a SHU, may be removed from the general population or any other placement based upon one reliable source item identifying the inmate as an active gang member or associate of the prison gang with which the inmate was previously validated. The source item must identify the inmate as a gang member or associate based on information developed after his or her release from SHU. The source item need not be confidential, but must meet the test of reliability established at section 3321.

15 *Id.* at 10-11; Cal. Code Regs. tit. 15, §§ 3321(c); 3378(f). The confidential source met the criteria
16 established in § 3321, in that the confidential source has provided reliable information in the past.
17 *Id.* This single piece of evidence met the criteria for § 3378(f). *Id.* at 11. Plaintiff requested to be
18 released from the SHU, but in accordance with Cal. Code Regs. tit. 15, § 3341.5, the Departmental
19 Review Board may authorize release from the SHU for gang members or associates categorized as
20 inactive. *Id.* Plaintiff was afforded all due process rights, in accordance with Cal. Code Regs. tit. 15,
21 § 3378. *Id.*

22 On August 24, 2009, N. Grannis, Inmate Appeals Branch, denied Plaintiff's inmate appeal
23 at the third (director's) level of review. *Id.* at 13-14. In the decision by Grannis, he noted that the
24 source items were again reviewed by Institutional Gang Investigator ("IGI") staff. *Id.* at 13. The
25 documents were submitted to the Office of Correctional Safety ("OCS"), and the source item met
26 the requirement for validation by OCS.

27 Defendant Adame violated Plaintiff's right to due process for gang validation, which led to
28 Plaintiff's indeterminate SHU term, for failing to follow procedure or meet the "some evidence"

standard. *Id.* at 4. This caused Plaintiff mental and emotional distress. *Id.* Defendant Tyree witnessed Adame's illegal actions and failed to correct the misconduct, also violating Plaintiff's due process rights and causing mental and emotional distress. *Id.*

Plaintiff seeks declaratory relief; expungement of the wrongful validation; and punitive damages of $50,000 against each Defendant. *Id.* at 3.

### III. Legal Standard and Analysis for Plaintiff's Claims

#### A. Fourteenth Amendment Due Process / Gang Member Validation

Plaintiff states he was deprived of due process when validated as an associate of the Mexican Mafia (EME) gang.

Plaintiff has not identified a protected liberty interest with respect to remaining free from the validation, and Plaintiff has not identified any due process violations with respect to his validation. The Due Process Clause protects Plaintiff against the deprivation of liberty without the procedural protections to which he is entitled under the law. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). To state a claim, Plaintiff must first identify the interest at stake. *Wilkinson*, 545 U.S. at 221. Liberty interests may arise from the Due Process Clause or from state law. *Id.* The Due Process Clause itself does not confer on inmates a liberty interest in avoiding more adverse conditions of confinement, *id.* at 221-22, and under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the condition of confinement at issue, *id.* at 222-23 (citing *Sandin v. Conner*, 515 U.S. 472, 481-84 (1995)). Liberty interests created by prison regulations are generally limited to freedom from restraint which imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Wilkinson*, 545 U.S. at 221 (citing *Sandin*, 515 U.S. at 484); *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007).

If a protected interest is identified, the inquiry then turns to what process is due. *Wilkinson*, 545 U.S. at 224. The validation of gang members and affiliates is an administrative measure rather than a disciplinary measure, and as a result, prisoners are entitled only to the minimal procedural protections of adequate notice, an opportunity to be heard, and periodic review. *Bruce v. Ylst*, 351 F.3d 1283, 1287 (9th Cir. 2003). In addition to those minimal protections, there must be some evidence with an indicia of reliability supporting the decision. *Bruce*, 351 F.3d at 1287; *Cato v.*

1  *Rushen*, 824 F.2d 703, 705 (9th Cir. 1987).

2  California's policy of assigning suspected gang affiliates to the secured housing unit ("SHU") is not a disciplinary measure, but rather an administrative strategy designed to preserve order in the prison and to protect the safety of all inmates. *Munoz v. Rowland*, 104 F.3d 1096, 1098 (9th Cir. 1997). A prison gang validation proceeding is subject to the "some evidence" standard where it is an administrative strategy rather than a disciplinary action. *Bruce*, 351 F.3d at 1287-88 (citing *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)). There is no independent assessment of witness credibility or re-weighing of evidence; rather "the relevant question is whether there is any evidence in the record that could support the conclusion." *Hill*, 472 U.S. at 455-56.

3  According to the information in Plaintiff's complaint, on March 12, 2009, interviews were held of all inmates and a confidential source alleged Plaintiff as a gang member associate. Compl. at 7. On March 20, 2009, Defendant Adame served Plaintiff with written notice of the reason for segregation and the 1030 Confidential Information Disclosure. *Id.* at 3, 7, 16. Defendant Adame reported that the confidential source was considered reliable because the confidential source has previously provided information which proved to be true. *Id.* at 16. In the validation chrono, Defendant Adame reported that Plaintiff refused to sign the validation interview notification and disclosure form, but Plaintiff did state that he understood the source items. *Id.* at 17, 18. On March 23, 2009, Defendants Adame and Tyree arrived for Plaintiff's hearing / interview. *Id.* at 4. Plaintiff told them that he did not know the charges against him and he had not been re-issued the written notice. *Id.* Defendant Adame told Plaintiff it was "now or never" and gave him an abbreviated description of the charges. *Id.* On March 25, 2009, Plaintiff was removed from inactive status and re-validated as an active Mexican Mafia (EME) prison gang associate. *Id.* at 4, 10, 19. On April 30, 2009, the ICC held a SHU initial review in absentia, as Plaintiff refused to attend the hearing. *Id.* at 20. The ICC elected to double cell Plaintiff with other validated gang members or associates of the Mexican Mafia (EME) gang for an indeterminate SHU pending transfer or 180 day review. *Id.*

From the information provided in Plaintiff's complaint, it appears that he had the "minimal procedural protections" of adequate notice and an opportunity to be heard five days prior to re-validation. The existence of the confidential source provides "some evidence" to support Plaintiff's

gang validation. In addition, the ICC held a periodic review for Plaintiff's SHU term. Thus, Plaintiff's complaint demonstrates that he had sufficient notice, an opportunity to be heard, and periodic review, although he refused to sign the documents or attend his initial SHU hearing. *Bruce*, 351 F.3d at 1287. In addition, Defendant Adame reported that the confidential source was considered reliable because the confidential source has previously provided information which proved to be true, which satisfies the "some evidence" standard and an "indicia of reliability" supporting the decision. *Bruce*, 351 F.3d at 1287-88 (citing *Hill*, 472 U.S. at 455-56); *Cato v. Rushen*, 824 F.2d at 705.

To state a claim, Plaintiff must demonstrate the existence of a liberty interest and a denial of due process. Plaintiff's claim fails because he does not identify an atypical and significant hardship pursuant to *Wilkinson* and he does not show that he lacked minimal procedural protections pursuant to *Bruce*. Therefore, Plaintiff fails to state a cognizable claim against Defendants based upon Fourteenth Amendment Due Process / Gang Member Validation.

### B. Inmate Appeals Process

Defendants' actions in responding to Plaintiff's appeals, alone, cannot give rise to any claims for relief under section 1983 for violation of due process. "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (citing *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); *see also Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." *Azeez*, 568 F. Supp. at 10; *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986). Actions in reviewing a prisoner's administrative appeal cannot serve as the basis for liability under § 1983. *Buckley*, 997 F.2d at 495. Accordingly, the Court finds that Plaintiff fails to state a cognizable claim for relief under § 1983 based upon the inmate appeals process.

//

//

### C. Violation of State Prison Rules and Regulations

Violations of state prison rules and regulations, without more, do not support any claims under section 1983. *Ove v. Gwinn*, 264 F.3d 817, 824 (9th Cir. 2001); *Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997). Only if the events complained of rise to the level of a federal statutory or constitutional violation may Plaintiff pursue them under section 1983. *Patel*, 648 F.3d at 971; *Jones*, 297 F.3d at 934. Thus, complaints that prison officials violated state regulations regarding the inmate appeals process or prison disciplinary proceedings, for example, will not support a claim for relief under § 1983.

### D. Expungement of Records from Plaintiff's Central File

The Ninth Circuit has not found that prisoners have an independent right, grounded in the Due Process Clause, to an accurate prison record. *See Hernandez v. Johnston*, 833 F.2d 1316, 1318-19 (9th Cir. 1987); *see Johnson v. Rodriguez*, 110 F.3d 299, 308-09 & n.13 (5th Cir. 1997). Liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Accordingly, the Court finds that Plaintiff fails to state a cognizable claim for relief under § 1983 based upon expungement of records from his central file.

### E. Intentional and Negligent Infliction of Emotional Distress

Under California law, the elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Corales v. Bennett*, 567 F.3d 554, 571 (9th Cir. 2009); *Tekkle v. United States*, 567 F.3d 554, 855 (9th Cir. 2007); *Simo v. Union of Needletrades, Industrial & Textile Employees*, 322 F.3d 602, 621-22 (9th Cir. 2003). Conduct is outrageous if it is so extreme as to exceed all bounds of that usually tolerated in a civilized community. *Corales*, 567 F.3d at 571; *Tekkle*, 511 F.3d at 855; *Simo*, 322 F.3d at 622.

The negligent infliction of emotional distress is not an independent tort but the tort of negligence to which the traditional elements of duty, breach of duty, causation and damages apply.

1  *Wong v. Tai Jin*, 117 Cal. Rptr.3d 747, 767 (Cal. Ct. App. 2010); *Potter v. Firestone Tire & Rubber
2  Co.*, 6 Cal.4th 965, 984 (Cal. 1993); *Burgess v. Superior Court*, 2 Cal.4th 1064, 1072 (Cal. 1992).
3  Where there is no personal, physical injury, the emotional distress must have been serious, which
4  is the functional equivalent to severe emotional distress. *Schwarz v. Lassen County ex rel. Lassen
5  County Jail (Detention Facility)*, 2011 WL 3319626, at *9 (E.D. Cal. Aug. 1, 2011) (citing *Wong*,
6  117 Cal. Rptr.3d at 768).

7        Plaintiff fails to state a claim for intentional infliction of emotional distress, as he does not
8  allege conduct that is so outrageous and so extreme as to exceed all bounds of that usually tolerated
9  in a civilized community. *Corales*, 567 F.3d at 571; *Tekkle*, 511 F.3d at 855; *Simo*, 322 F.3d at 622.
10 Plaintiff also fails to state a claim for negligent infliction of emotional distress, as he does not allege
11 conduct that would cause severe emotional distress. *Schwarz*, 2011 WL 3319626, at *9 (citing *Wong*,
12 117 Cal. Rptr.3d at 768). Accordingly, the Court finds that Plaintiff fails to state a cognizable claim
13 for intentional or negligent infliction of emotional distress against Defendants. The Court notes that
14 the prior order from the United States District Court, for the Northern District of California, San
15 Francisco Division, found that Plaintiff failed to state a claim for mental or emotional distress and
16 dismissed those claims. Doc. 5.

17                                          **IV. Conclusion and Order**

18       Plaintiff's complaint fails to state any claims upon which relief may be granted. The Court
19 will provide Plaintiff with the opportunity to file an amended complaint. *Lopez v. Smith*, 203 F.3d
20 1122, 1130 (9th Cir. 2000) (en banc); *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987).
21 Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended
22 complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

23       Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what
24 each named defendant did that led to the deprivation of Plaintiff's constitutional rights, *Iqbal*, 556
25 U.S. at 676-77. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a
26 right to relief above the speculative level . . ." *Twombly*, 550 U.S. at 555.

27       Finally, an amended complaint supersedes the prior complaint, *Forsyth v. Humana, Inc.*, 114
28 F.3d 1467, 1474 (9th Cir. 1997); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), and it must be

"complete in itself without reference to the prior or superseded pleading," Local Rule 220. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) (reference to original and first amended complaints was precluded by doctrine that an amended pleading supersedes the original pleading). Therefore, "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." *King*, 814 F.2d at 567 (citing to *London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981)); *accord Forsyth*, 114 F.3d at 1474.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's complaint is DISMISSED for failure to state a claim upon which relief may be granted;
2. The Clerk's Office shall send Plaintiff a complaint form;
3. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a **first amended complaint**; and
4. If Plaintiff fails to file a first amended complaint in compliance with this order, this action will be dismissed, with prejudice, for failure to state a claim.

IT IS SO ORDERED.

Dated: August 23, 2012

UNITED STATES MAGISTRATE JUDGE