# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES TAKECHI, | ) 1:12cv00913 AWI DLB PC ) |
| Plaintiff, | ) ) FINDINGS AND RECOMMENDATIONS ) REGARDING DEFENDANTS' MOTION |
| vs. | ) FOR SUMMARY JUDGMENT ) (Document 31) |
| G. ADAME, et al., | ) ) THIRTY-DAY OBJECTION DEADLINE |
| Defendants. | ) |

Plaintiff James Takechi ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action in the Northern District of California on October 31, 2011. The action was transferred to this Court on May 31, 2012. The action is proceeding on Plaintiff's September 12, 2012, First Amended Complaint ("FAC") for violation of due process against Defendants G. Adame and J. Tyree.

Defendants filed a motion for summary judgment[1] on January 27, 2013. Plaintiff opposed the motion on March 7, 2014. Defendants filed their reply, along with evidentiary objections, on March 28, 2014. The motion is submitted upon the record without oral argument. Local Rule 230(l).

---

[1] Concurrently with their motion for summary judgment, Defendants served Plaintiff with the requisite notice of the requirements for opposing the motion. Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998).

1

## I.     LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)). If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v.

City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), cert. denied, 132 S.Ct. 1566 (2012).  The Court determines only whether there is a genuine issue for trial, and Plaintiff's filings must be liberally construed because he is a pro se prisoner.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

## II.     SUMMARY OF PLAINTIFF'S ALLEGATIONS[2]

The events at issue occurred while Plaintiff was incarcerated at California Correctional Institution ("CCI") in Tehachapi, California.  Plaintiff is currently incarcerated at Pelican Bay State Prison in Crescent City, California.

Plaintiff alleges that on March 18, 2009, Defendant Adame needlessly placed him on contraband watch ("CW").

On March 20, 2009, Defendant Adame served Plaintiff with a written notice of the charge against him, "knowing full well that Plaintiff had no use of his hands" and that nothing is allowed in CW cells.  FAC 3.  CW staff took possession of the written notice, and it was ultimately lost before Plaintiff read it.

On March 22, 2009, Plaintiff was taken to Administrative Segregation.

On March 23, 2009, Defendants Adame and Tyree conducted Plaintiff's hearing.  Prior to this, Plaintiff told them that he never received the written notice and did not know what the charge was.  Defendant Adame told him, "now or never," and gave Plaintiff the gist of the charge.  FAC 4.

Plaintiff denied the allegations and asked how the informant had this information because Plaintiff was a recent arrival at CCI, had been on lockdown/modified program and had not yet made any acquaintances.  Plaintiff pleaded with Defendant Adame to check the information because it was based on conjecture, rumor or hearsay and prohibited by validation protocol.

---

[2] Contentions set forth in verified pro se pleadings, motions, and/or oppositions constitute evidence where the contentions are based on personal knowledge of facts admissible in evidence.  Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004).

3

Defendant Adame refused, stating that he had completed his investigation on March 16, 2009. Defendants promised to return with the written notice, but failed to do so.

On the same day, Defendant Adame submitted the validation package for approval, without providing a copy to Plaintiff.

On March 25, 2009, Plaintiff was revalidated as an active gang associate.

On April 20, 2009, Defendant Tyree granted Plaintiff's appeal and issued the written notice.

Based on these allegations, Plaintiff contends that Defendants violated his due process rights by (1) validating him, which resulted in an indefinite SHU term, without affording him a 24-hour preparation period, advanced written notice or a fair hearing/interview; and (2) relying on uncorroborated hearsay evidence from a single confidential informant who, reliable or not, had no first-hand knowledge as required by validation protocol.

### III.     UNDISPUTED MATERIAL FACTS[3]

At all relevant times, Plaintiff was confined at CCI and Pelican Bay State Prison. Duncan Decl. ¶ 3, Ex. B.  At all relevant times, Defendants Adame and Tyree were employed by CDCR as Institutional Gang Investigators ("IGIs") at CCI.  Adame Decl. ¶ 2.

Plaintiff was initially validated as an associate of the Mexican Mafia prison gang on May 16, 2011, at Ironwood State Prison.  Six confidential source items supported Plaintiff's initial validation.  Adame Decl. ¶ 8; Duncan Decl. Ex. C.  Following Plaintiff's initial validation, he was transferred to the Pelican Bay SHU on May 22, 2002.  Duncan Decl. Ex. B.  His status as an associate of the Mexican Mafia was updated and confirmed on September 29, 2003, and he was retained in the Pelican Bay SHU.  Adame Decl. ¶ 9; Duncan Decl. Ex. D.

---

[3] Facts which are immaterial to resolution of Defendants' motion for summary judgment, unsupported by admissible evidence, and/or redundant are omitted.

Plaintiff's initial gang validation was appropriate and did not violate his due process rights. Plaintiff's conduct during his initial validation led to his validation as an associate of the Mexican Mafia. Duncan Decl. Ex. N, 18:14-25, 63:5-13.

On October 4, 2007, the Pelican Bay IGIs submitted a gang validation package recommending an inactive review of Plaintiff's gang status. The gang status review revealed no gang activity by Plaintiff during his incarceration in the Pelican Bay and CCI SHUs from June 26, 2001, through October 4, 2007. On October 10, 2007, Plaintiff was revalidated as an inactive associate of the Mexican Mafia. Adame Decl. ¶ 12; Duncan Decl. Ex. E.

On April 8, 2008, after his revalidation as an inactive Mexican Mafia associate, Plaintiff was transferred to the general population of a Level IV facility at CCI. Duncan Decl. Ex. B.

On March 15, 2009, Defendant Adame initiated an investigation regarding Plaintiff's gang status. Adame Decl. ¶ 14.

On March 18, 2009, Plaintiff was transferred to CCI's administrative segregation unit pending an investigation into his continued involvement with the Mexican Mafia prison gang. Duncan Decl. Ex. F.[4]

Also on March 18, 2009, Plaintiff was placed on contraband watch ("CW") for four days. Duncan Decl. Ex N, 27:10-17.

On March 20, 2009, while on CW, Defendant Adame attempted to provide Plaintiff with a Confidential Information Disclosure Form (CDC Form 1030), which indicated that a single confidential informant was being relied upon to revalidate him as an active associate of the Mexican Mafia. Adame Decl. ¶ 23, Duncan Decl. Ex. G, J. Because Plaintiff did not have use

---

[4] Plaintiff disputes the use of the word "pending," and argues that Defendant Adame had already completed his investigation and concluded that Plaintiff was an active prison gang associate. Defendants object to Plaintiff's statement, arguing that the response is inconsistent and misconstrues Defendant Adame's testimony. Indeed, the evidence that Plaintiff points to demonstrates that Defendant Adame "completed" his investigation on May 16, 2009, and concluded that there was sufficient evidence to identify Plaintiff as an active Mexican Mafia associate. Adame Decl. ¶ 22, Pl.'s Ex. G (ECF No. 41, at 66). However, Defendant Adame's May 16, 2009, "conclusion" was the end of the initial investigation and triggered the next step in the validation process- the interview where an inmate is permitted an opportunity to be heard. Pl.'s Ex. N (ECF No. 41, at 102). Accordingly, the fact remains undisputed.

of his hands, Defendant Adame left the CDC Form 1030 with the officer who was supervising Plaintiff's CW.  Adame Decl. ¶ 23, Duncan Decl. Ex. N, 36:8-18.  Defendant Adame told Plaintiff that he would return in a couple of days.  Adame Decl. ¶ 23.

On March 23, 2009, after Plaintiff completed CW, Defendant Adame interviewed him regarding the confidential source item that Defendant Adame intended to submit to the Office of Correctional Safety with Plaintiff's gang validation packet.  Adame Decl. ¶ 25; Duncan Decl. Ex I, N, 47:11-48:25.  Defendant Adame informed Plaintiff that a single informant identified him as a part of the Mesa, a leadership group within the Mexican Mafia prison gang.  Plaintiff voiced his opinion that the informant's information was not true, and was based on hearsay and conjecture.  Adame Decl. ¶ 25, Duncan Decl. Ex N., 47-48.  Defendant Adame documented a portion of Plaintiff's denial.  Adame Decl. ¶ 25, Duncan Decl. Ex I.

Defendant Tyree does not recall attending Defendant Adame's March 23, 2009, interview with Plaintiff.  Tyree Decl. ¶ 4.  Plaintiff's gang revalidation packet does not show that Defendant Tyree participated in the interview.  Duncan Decl. Ex I.  Had Defendant Tyree been present, he would not have postponed the interview to provide Plaintiff with additional notice and time to prepare for the interview.  Tyree Decl. ¶ 6.

On March 23, 2009, Defendant Adame submitted a gang validation packet to the Office of Correctional Safety recommending Plaintiff for revalidation as an active Mexican Mafia associate.  Adame Decl. ¶ 26; Duncan Decl. Ex. I.

On March 25, 2009, a Special Agent with the Special Service Unit revalidated Plaintiff as an active Mexican Mafia associate.  Duncan Decl. Ex. J.

On March 27, 2009, a classification committee conducted an initial review of Plaintiff's administrative segregation placement and retained Plaintiff in administrative segregation. Duncan Decl. Ex K.

On April 3, 2009, a classification committee reviewed Plaintiff's administrative

segregation status, elected to retain Plaintiff in administrative segregation and recommended transfer to the Pelican Bay SHU.  Duncan Decl. Ex. L.

On June 3, 2009, Takechi was transferred to an administrative segregation unit at Pelican Bay.  Duncan Decl. Ex B.

## IV. **DISCUSSION**

    A.    <u>Plaintiff's Due Process Rights to Notice and Opportunity to be Heard</u>

        1.    *Legal Standard*

Interests that are procedurally protected by the Due Process Clause may arise from the Due Process Clause itself and the laws of the states.  <u>Hewitt v. Helms</u>, 459 U.S. 460, 466 (1983) overruled, in part, on other grounds by <u>Sandin v. Conner</u>, 515 U.S. 472, 483-484 (1995); <u>Meachum v. Fano</u>, 427 U.S. 215, 223-27 (1976).  The Ninth Circuit has held that the hardship associated with administrative segregation is not so severe as to violate Due Process.  <u>See Toussaint v. McCarthy</u>, 801 F.2d 1080, 1091–91 (9th Cir.1986).  However, changes in the conditions of confinement may amount to a deprivation of a state-created and constitutionally protected liberty interest, provided the liberty interest in question is one of "real substance" and where the restraint "imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  <u>Sandin</u>, 515 U.S. at 477.

The placement of an inmate in the SHU indeterminately may amount to a deprivation of a liberty interest of "real substance" within the meaning of <u>Sandin</u>.  <u>See Wilkinson v. Austin</u>, 545 U.S. 209 (2005).  The assignment of validated gang members to the SHU is an administrative measure rather than a disciplinary measure, and is "essentially a matter of administrative segregation."  <u>Bruce v. Ylst</u>, 351 F.3d 1283, 1287 (9th Cir.2003) (quoting <u>Munoz v. Rowland</u>, 104 F.3d 1096, 1098 (9th Cir.1997)).  As such, Plaintiff is entitled to the minimal procedural protections set forth in <u>Toussaint</u>, which is "some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer

him to administrative segregation. . ." <u>Bruce</u>, 351 F.3d at 1287 (citing <u>Toussaint</u>, 801 F.2d at 1100); <u>Castro v. Terhune</u>, 712 F.3d 1304, 1308 (9th Cir.2013).

        2.    *Analysis*

As an initial matter, insofar as Plaintiff argues that he was entitled to written notice and a twenty-four hour preparation period, his argument is without merit. As discussed above, federal due process requires only that Plaintiff receive "some notice of the charges" and an opportunity to present his views to the decision-maker.

        a.    Notice

It is undisputed that on March 20, 2009, Defendant Adame visited Plaintiff while he was on CW. It is also undisputed that Defendant Adame attempted to provide Plaintiff with the CDCR Form 1030, which indicated that a single confidential informant was being relied upon to revalidate him as an active associate of the Mexican Mafia. Because Plaintiff was on CW, it is undisputed that Defendant Adame left the CDCR Form 1030 with the officer supervising Plaintiff's CW.

While Defendant Adame contends that he gave Plaintiff verbal notice of the charges, Plaintiff states in his declaration that Defendant Adame "departed without telling me what the charges were, and his only comment was that he will be back in a couple of days." Pl.'s Decl. ¶ 2 (ECF No. 41, at 18). Defendants object to this statement, arguing that it is inconsistent with Plaintiff's deposition testimony.

During his deposition, Plaintiff testified that Defendant Adame told him, "I have your 1030 right here," and that he'd be back in a couple of days. Duncan Decl. Ex. N, 33:22-34:4, 38:5-7. Plaintiff further testified that he "knew just from general that it was probably -- probably due to my revalidation. So I assumed." Duncan Decl. Ex. N, 38:9-12. Plaintiff explained that he knew the revalidation process, and that he assumed (and that it was reasonable to conclude) that Defendant Adame was an IGI. Duncan Decl. Ex. N, 38:13-21. When asked why Plaintiff

came to that conclusion, he stated, "because he had the 1030 and that's usually the person who hands you the 1030, is the one who is investigating you." Duncan Decl. Ex. N, 38:22-25. Plaintiff understood "that that's what Officer Adame was doing." Duncan Decl. Ex. N, 39:8-10. Plaintiff also testified that when Defendant Adame said that he'd be back, he assumed it was for the revalidation interview. Duncan Decl. Ex N. 45:18-25.

Although Defendants argue that Plaintiff's deposition testimony is inconsistent with his claim that he didn't receive notice, it appears that his testimony is simply more detailed. In other words, his testimony provides more detail as to the conversation with Defendant Adame, though it remains consistent with his allegation that the notice was not sufficient.

The issue therefore becomes whether Defendant Adame's notice was sufficient. Again, it is undisputed that Defendant Adame attempted to provide Plaintiff with the Form 1030 and that he left it with a supervisor because of Plaintiff's status. Plaintiff also admits that because of his prior experience with gang validation, he assumed that Defendant Adame was an IGI, that his visit was related to his gang revalidation and that he would be conducting a hearing. This notice is sufficient to meet the "some notice" standard.

Even assuming that Defendant Adame did not tell Plaintiff the evidence against him when he talked with him on March 20, 2009, the Court does not read the "some evidence" standard as requiring more detail than what was provided. Plaintiff knew that Defendant Adame was investigating him for possible revalidation and that he would be conducting a hearing a few days later.

Nonetheless, Plaintiff also testified that at the beginning of the interview, he told Defendant Adame that he didn't have a copy of the 1030 and didn't know what the allegation was. Duncan Decl. Ex. N, 47:17-23. At that time, Defendant Adame told him, "it says you're a member of the Mesa," and that a confidential informant provided the information. Duncan Decl.

9

Ex. N, 47:24-48:10.  Therefore, in addition to the March 20, 2009, notice, Plaintiff was given more specific information just prior to his interview.

        b.   Interview

   Turning to Plaintiff's interview, it is undisputed that Defendant Adame interviewed him on March 23, 2009, regarding the confidential source that he was relying on in his revalidation investigation.  Defendant Adame told Plaintiff that a single informant identified Plaintiff as a part of the Mesa, a leadership group within the Mexican Mafia prison gang.  Plaintiff voiced his opinion that the informant's information was not true, and was based on hearsay and conjecture.  Defendant Adame documented a portion of Plaintiff's denial on a validation chrono.  Duncan Decl., Ex I; Adame Decl. ¶ 25.

   The undisputed facts therefore demonstrate that Plaintiff received the process he was due under the Constitution- an opportunity to present his views to the critical decision-maker.  <u>Toussaint v. McCarthy</u>, 926 F.2d 800, 803 (9th Cir.1990) (due process requires opportunity for prisoner to present views to the critical decision-maker).

   Insofar as Plaintiff contends that his due process rights were violated because Defendant Adame only "partially" documented his statement, he is incorrect.  Due process does not require anything beyond an opportunity to be heard by the IGI.

   Plaintiff also argues that he was denied a fair and non-adversarial interview because Defendant Adame refused to question the informant and told Plaintiff that his investigation was over.  Plaintiff therefore believes that the outcome of the hearing was predetermined.  However, it is undisputed that Defendant Adame documented Plaintiff's concerns prior to submitting the revalidation package to the Office of Correctional Safety.  Plaintiff's opinion as to Defendant Adame's state of mind does not create a genuine dispute of material fact.

   In any event, Defendants also point to Plaintiff's testimony during his deposition, when he said numerous times that he told Defendant Adame everything he wanted to say and couldn't

think of any other evidence that he would have presented.  Duncan Decl. Ex N, 62:4-20, 73:15-18.  Plaintiff attempts to dispute this by pointing to his statement in his deposition that he could not think of anything "at this time," meaning at the moment of the deposition.  In his current declaration, however, he does not suggest that he would have presented more evidence, nor does he identify any such evidence or arguments.  Arguments or contentions set forth in a responding brief do not constitute evidence.  See Coverdell v. Dep't of Soc. & Health Servs., 834 F.2d 758, 762 (9th Cir. 1987).  Accordingly, the fact remains undisputed.

The undisputed facts, viewed in the light most favorable to Plaintiff, demonstrate that his due process rights were not violated.

      B.      Plaintiff's Gang Validation

           1.      *Legal Standard*

Due process guarantees that the evidence used to validate a prisoner as a gang member meet the "some evidence" standard.  Castro v. Terhune, 712 F.3d 1304, 1314 (9th Cir. 2013).  The "some evidence" review requires the Court "to ask only 'whether there is *any evidence* in the record that could support the conclusion.'"  Id. (citing Bruce, 351 F.3d at 1287) (emphasis in original).  The test is "minimally stringent," Powell v. Gomez, 33 F.3d 39, 40 (9th Cir.1994), and thus the Court does not "examine the entire record, independently assess witness credibility, or reweigh the evidence."  Castro, 712 F.3d at 1314 (citing Bruce, 351 F.3d at 1287).

Evidence only must bear "some indicia of reliability" to be considered "some evidence."  Toussaint v. McCarthy, 926 F.2d 800, 803 (9th Cir.1990).  When this information includes statements from confidential informants, the record must contain "some factual information from which the committee can reasonably conclude that the information was reliable."  Zimmerlee v. Keeney, 831 F.2d 183, 186 (9th Cir.1987), *cert. denied*, 487 U.S. 1207 (1988).

2. *Analysis*

It is undisputed that Defendant Adame relied on information received from a single confidential informant who identified Plaintiff as part of the Mesa. Accordingly, as there is evidence in the record that could support Defendant Adame's conclusion, there was some evidence to support Plaintiff's validation.

Turning to the reliability of the evidence, Plaintiff disputes Defendant Adame's statement that the source was reliable under CDCR regulations because "the confidential source previously provided information which proved to be true, the information is corroborated by other informants, is self-incriminating, and is corroborated through investigation." Adame Decl. ¶ 26. In disputing these facts, Plaintiff argues that the CDCR Form 1030 "does not indicate this." ECF No. 41, at 15. Plaintiff is correct that the CDCR Form 1030 only indicates that the source is reliable because the source has previously provided information which proved to be true. Duncan Decl., Ex. G. However, even a single basis for reliability can meet the "some indicia of reliability" requirement.

In his opposition, Plaintiff argues that the information was uncorroborated hearsay information. In support of his contention, he cites Defendant Adame's response to Interrogatory No. 10, which asks whether Defendant Adame believes that uncorroborated second-hand or hearsay information from a confidential informant is reliable evidence. Defendant Adame responded, "The confidential informant relied on in Plaintiff's March 2009 revalidation was deemed reliable." ECF No. 41, at 64. Plaintiff contends that this statement "confirms that no other informant corroborated this evidence," but Defendant Adame's response simply repeats his contention that the informant was deemed reliable. ECF No. 41, at 7.

In any event, even if the informant's knowledge was based on hearsay, hearsay is not necessarily precluded by the "some evidence" rule. Rather, there must be some factual information from which it can be reasonably concluded that the information was reliable.

Plaintiff has therefore failed to raise a triable issue of fact on the reliability of the evidence used by Defendant Adame. On the evidence in the record, no reasonable jury could conclude that the evidence did not have sufficient indicia of reliability. The Court has reviewed the **sealed** confidential memorandum, mindful that Plaintiff will never be allowed to examine the document himself. The confidential memorandum meets the "some evidence" standard and has sufficient indicia of reliability. The confidential memorandum is constitutionally reliable, i.e., it contains some factual information from which the validating decision-maker reasonably could conclude that the information was reliable. See Zimmerlee, 831 F.2d at 186–87.

C.     Defendant Tyree

The parties dispute whether Defendant Tyree was directly involved in Plaintiff's revalidation, or knew of any violations and failed to prevent them. Defendant Tyree, an IGI Lieutenant, was an IGI Sergeant at the time of the events at issue. Tyree Decl. ¶¶ 1-2. Defendant Tyree reviewed Plaintiff's revalidation package and states that he does not believe that he was involved in the 2009 revalidation. Tyree Decl. ¶ 4. He states that he has no recollection regarding the details of Plaintiff's 2009 revalidation and does not recall whether he participated in the March 20, 2009, contact or the March 23, 2009, interview. Tyree Decl. ¶ 4. He further states that even if he was present, he would not have postponed or interfered with Defendant Adame's interview. Tyree Decl. ¶ 6.

In his declaration, as well as during his deposition, Plaintiff states that both Defendants Adame and Tyree interviewed him. Pl.'s Decl. ¶ 3 (ECF No. 41, at 18); Duncan Decl., Ex. N, 47:11-13. However, even accepting Plaintiff's statement that Defendant Tyree was present as fact, the Court has found no disputed facts to suggest that a constitutional violation occurred. Similarly, insofar as Plaintiff argues that Defendant Tyree was present in a supervisory position, there can be no supervisory liability where there is no underlying violation.

D.  Qualified Immunity

Qualified immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986).

As the Court has found that no constitutional violation has occurred, it need not further discuss the issue of qualified immunity.

## V.  FINDINGS AND RECOMMENDATIONS

For the reasons set forth above, the Court HEREBY RECOMMENDS that Defendants' motion for summary judgment be GRANTED, thus concluding this action in its entirety.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served with these Findings and Recommendations, the parties may file written objections with the Court.  Local Rule 304(b).  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections must be filed within fourteen (14) days from the date of service of the objections.

Local Rule 304(d). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

    Dated:   **May 9, 2014**                       /s/ *Dennis L. Beck*
                                                 UNITED STATES MAGISTRATE JUDGE